# In the United States Court of Federal Claims

No. 24-0856V
Filed: April 28, 2026
NOT FOR PUBLICATION*

|  |  |
|---|---|
| **RICHARD BIEBER,** | |
| *Petitioner,* | |
| **v.** | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | |
| *Respondent.* | |

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for the petitioners.

*Eleanor Hanson*, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

### MEMORANDUM OPINION AND ORDER

**HERTLING**, Judge

On June 5, 2024, the petitioner, Richard Bieber, filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Program"), 42 U.S.C. § 300aa *et seq.*, alleging a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on November 29, 2021. In January 2025, the petitioner was found to be entitled to compensation for that injury. After the parties were unable to agree on a damages award, a special master awarded the petitioner $52,500.00 for pain and suffering for nine months post-vaccination. The special master did not award damages for future pain and suffering.

On February 11, 2026, the petitioner filed a motion for review. The petitioner challenges the special master's denial of an award for future pain and suffering and the underlying factual determination regarding the duration of his SIRVA; the petitioner also claims the special master relied on an improper legal standard to evaluate his future pain and suffering.

The special master applied the correct legal standard, reasonably evaluated the evidence, made supportable inferences, and thoroughly explained his conclusion. His factual

---

\* Pursuant to Vaccine Rule 18(b), this opinion was under seal on **April 3, 2026**, and the parties were afforded 14 days to propose any redactions of privileged or confidential information. As the parties did not propose any redactions, this opinion is reissued for public availability in its original form.

determination about the link between the petitioner's SIRVA and subsequent shoulder pain was reasonable, and because the petitioner did not prove causation beyond nine months post-vaccination, the respondent did not have to apportion between unrelated factors.  Accordingly, the petition for review is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Aside from the dispute over the duration of the petitioner's pain and suffering, the underlying facts are not in dispute.  The factual record consists of the petitioner's medical and vaccination records, email correspondence between him and his primary care physician ("PCP"), and his sworn declarations.

On November 29, 2021, the petitioner, then 58-years-old, received a flu vaccine in his right shoulder.  According to the petitioner, the vaccination was "given high on his shoulder." (ECF 36-1 at 3.)  On December 10, 2021, the petitioner emailed his PCP and reported acute and persistent right-shoulder pain that disrupted his sleep and his ability to make sudden movements. (ECF 6-4 at 4.)  At that time, the petitioner also requested refills for unrelated prescriptions for hydrocodone-acetaminophen and diazepam.  (*Id*.)  On December 29, 2021, the petitioner again emailed his PCP requesting an appointment because his shoulder pain had "gotten a lot worse." (*Id.* at 3.)

On January 4, 2022, the petitioner was seen by a physician's assistant ("PA"), who recorded that, since the vaccination, the petitioner had experienced right-shoulder pain and "mild achiness at rest," which worsened with pressure or movement.  (ECF 6-1 at 216.)  The PA also noted that the petitioner was right-handed and appeared to be limiting use of his right arm as much as possible.  (*Id*.)  A physical examination by the PA found full-range-of-motion, tenderness at the deltoid muscle, and "pain with extension and adduction."  (*Id*. at 217.)  The PA assessed that the petitioner had a "probable shoulder injury related to vaccine administration/subdeltoid or subacromial bursitis."  (*Id*. at 218.)  Although the PA discussed range-of-motion exercises, steroid injections, and physical therapy ("PT") with the petitioner, the PA deferred treatment decisions to an orthopedist.[2]

On January 11, 2022, the petitioner was evaluated by an orthopedist and received an x-ray of his right shoulder.  The orthopedist noted that the petitioner reported complaining of six weeks of persistent right-shoulder pain following a flu vaccine.  (*Id.* at 201.)  The orthopedist assessed that the petitioner had "symptoms consistent with subacromial bursitis/impingement, a known potential reaction after a vaccination given high in the deltoid that can irritate the

---

[1] On February 19, 2026, following his motion for review, the petitioner filed updated medical records.  (ECF 38.)  On a motion for review, the court is limited to the record underlying the special master's decision; new evidence is not considered.  *See* Rule 8(f), Appendix B to the Rules of the Court of Federal Claims ("RCFC") ("[a]ny fact . . . not raised specifically in the record before the special master [is] waived and cannot be raised . . . on review of a special master's decision.")

[2] The record contains no evidence that the petitioner ever received PT for his shoulder.

subacromial space." (*Id.* at 205) (cleaned up.)  The orthopedist noted that the x-ray showed "moderate right acromioclavicular arthritic changes" and "mild right glenohumeral arthritic change" but did not show any "obvious bony abnormality" and ordered a follow-up magnetic resonance imaging ("MRI") of the petitioner's right shoulder.  (*Id.* at 198, 205.)

The petitioner underwent the MRI on February 11, 2022.  The results of the MRI noted:

> Mild supraspinatus, infraspinatus, and teres minor tendinosis. Mild teres minor musculotendinous strain (grade 1 injury). Very low grade partial articular surface posterior supraspinatus tendon tear at the footprint measures 0.4 x 0.4 cm . . . . Mild acromioclavicular osteoarthritis with mild distal clavicular reactive marrow edema. Mild subacromial/subdeltoid bursitis.

(*Id.* at 182.)

The MRI also found "posterior superior rotator cuff tendinosis . . . . Very small partial articular-sided supraspinatus tendon tear as well." (*Id.* at 179.)  The orthopedist recommended treatment with non-steroidal anti-inflammatory drugs, ice and heat, and a future steroid injection. (*Id.*)  Surgery was not recommended.

On May 13, 2022, the petitioner returned to his orthopedist for a physical examination of his right shoulder.  (*Id.* at 134.)  A decreased range of motion was noted in his right shoulder, and the petitioner received a right subacromial bursa steroid injection.  (*Id.* at 130-35.)

On August 3, 2022, the petitioner returned to the orthopedist for a follow-up consultation.[3]  The petitioner reported that the May 2022 steroid injection had "not significantly alleviate[d] his symptoms," and that he was "having continued pain to his right shoulder." (*Id.* at 97.)  As a result, another steroid injection in the glenohumeral space, under fluoroscopic guidance by a radiologist, was recommended by the orthopedist.  (*Id.* at 102.)  The orthopedist also provided the petitioner with a prescription for Meloxicam and another referral to PT.[4]  (*Id.*)  On September 6, 2022, a radiology PA administered the fluoroscopy-guided steroid injection to the glenohumeral space of the petitioner's right shoulder.  (*Id.* at 48.)

Almost two years later, and one month after filing his petition for compensation under the Vaccine Act, the petitioner returned to his orthopedist on July 19, 2024.[5]  The orthopedist noted:

---

[3] During the intervening three months, the record reveals that the petitioner received counseling for chronic pain on May 27, 2022; an appointment with his PCP on June 13, 2022; and a neurology consultation on August 3, 2022.  None of these appointments appears to have been related to the petitioner's right-shoulder injury.

[4] As noted in footnote 2, there is no record that the petitioner ever received PT.

[5] The record does not reflect any medical encounters between the petitioner and his PCP or the orthopedist for his right-shoulder pain between the September 6, 2022, steroid injection

> Patient here to discuss continued shoulder pain.  Some pain persists with overhead activities. Does state that injection to the glenohumeral space helped at his last visit was a few years ago. Patient interested in attempting injection again.

(*Id*. at 92.)

Since August 2024, the petitioner's medical records continue to reference shoulder complaints.  At a neurology appointment on August 4, 2025, the petitioner mentioned "more issues with his right shoulder/bursitis and back," but no additional treatment was planned for the shoulder.  (ECF 31-1 at 70-78.)

After receiving additional x-rays of his right shoulder on August 30, 2024, the petitioner received another steroid injection administered fluoroscopically by a radiology PA.  (ECF 9-1 at 10; ECF 26-1 at 76.)

In September 2025, the petitioner saw his orthopedist for pain in the right shoulder and elbow but did not receive a physical examination.  (*Id*. at 53-59.)  That same month, the petitioner saw a different orthopedist for right-elbow pain.  (*Id.* at 33-36.)  The new orthopedist assessed "tennis elbow" and treated it with a steroid injection.  (*Id.*)

In an affidavit and a supplemental statement submitted in support of his claim, the petitioner asserted that his shoulder pain "continues to this day," (ECF 6-5 at ¶ 10), and that he continues to suffer daily pain, weakness, and movement restrictions.  (ECF 18-1 at ¶ 2.)  The petitioner avers that the injury interrupts his ability to sleep, carry groceries, participate in sports, walk his dog, and shovel snow.  (*Id.* at ¶¶ 4-8.)

## PROCEDURAL HISTORY AND THE SPECIAL MASTER'S DECISION

On June 5, 2024, the petitioner filed this petition for compensation under the Vaccine Program.  (ECF 1.)  The petitioner alleged that the November 29, 2021, flu vaccine caused a SIRVA.

In January 2025, the petitioner was found entitled to compensation for a Table SIRVA. (ECF 15-17.)  Thereafter, the parties exchanged their respective damages proposals but were unable to agree on quantum.  As a result, the special master set a briefing schedule and requested that the parties articulate each proposed damages component, explain the underlying reasoning for its proposed quantum, and provide comparisons to past reasoned opinions on Table SIRVA damages.

The petitioner filed his brief on May 29, 2025, (ECF 27), the respondent filed its response on July 16, 2025, (ECF 28), and the petitioner replied on August 15, 2025.  (ECF 29.)  On December 19, 2025, the special master heard oral argument, during which he rendered an oral ruling that was reflected in a written decision filed on January 12, 2026.  (ECF 35.)  The special

---

and July 19, 2024.  The special master did note that the petitioner had had more than 35 medical encounters during that period regarding other medical concerns.  (ECF 35 at 6-8.)

master concluded that the petitioner had "established past pain and suffering" and awarded the petitioner $52,500.00 in damages.

The special master considered the demand for damages to reflect the petitioner's pain and suffering beyond the nine months of documented treatment for the SIRVA.  Bearing in mind that the burden of proof with respect to each element of compensation requested rests with the petitioner, the special master concluded that the record reflected that the petitioner "had no history of right shoulder pain or dysfunction" prior to his flu vaccine on November 29, 2021, and that "[a] full review of the record demonstrates that [p]etitioner suffered a mild SIRVA." (*Id.* at 5; *Id.* at 10.)  He also found that the evidence demonstrated a "lack of any significant impacts on [the petitioner's] employment or other obligations." (*Id.* at 11.)  Although the petitioner argued that the SIRVA had affected his ability to work, the special master concluded that this claim was not corroborated by the evidence.  Instead, the special master determined that the evidence reflected that the petitioner's unrelated medical conditions, such as tremors and hip pain, were the cause of any interference with the petitioner's work. (*Id.*)  The medical records for the petitioner's shoulder showed no recommendation for surgery and a conservative course of treatment. (*Id.*)

The special master further concluded that the 22-month gap in documentation, related to the petitioner's treatment for his SIRVA, supported the finding that the petitioner was "not experiencing significant sequelae of an ongoing shoulder injury throughout this period." (*Id.*)  The special master rejected the petitioner's explanation that the September 2022 steroid injection had relieved his injury during the "19-month gap."[6] (*Id.*)  The petitioner's assertion that he had been hesitant to proceed with additional steroid injections during the gap, due to a concern with osteoporosis, was also rejected as it was not supported by the petitioner's medical records. (*Id.*)  Based on the evidence, the special master concluded that the petitioner's "active treatment extend[ed] just nine months post-vaccination," to September 2022. (*Id.*)

As to the petitioner's demand for damages for a future component for pain and suffering, the special master concluded that it "has not been preponderantly supported." (*Id.* at 12.)  To determine whether the petitioner's SIRVA justified an award for future pain and suffering, the special master reviewed whether the petitioner had provided "strong medical evidence of an injury that continued without interruption and is medically attributable back to the vaccine, and not from potential alternative explanations." (*Id.*)

After analyzing and applying prior decisions on damages for future pain and suffering, the special master determined that:

> the mild shoulder injury documented for nine months post-vaccination, the limited treatment received, the lack of

---

[6] In his opinion, the special master separately referred to the treatment and documentation gap as lasting both 22 and 19 months.  *See* ECF 35 at 6 (22 months), 11 (19 months).  The petitioner's last treatment before the gap occurred on September 6, 2022, and the next reported instance of pain was on July 19, 2024, a span of 22 months.  The erroneous reference to 19 months does not affect the analysis.

5

documentation, and [r]espondent's proposed alternative explanations [such as the mild right glenohumeral arthritic changes noted on his January 11, 2022, x-ray or the neurological symptoms petitioner suffered in August and September of 2022], all weigh against a conclusion that [p]etitioner's later shoulder complaints are preponderantly related to his SIRVA.

(*Id.*)

The special master adopted the respondent's proffer as the appropriate award of damages for the petitioner's injury and awarded $52,500.00 for past pain and suffering, with no future component.  (*Id*. at 13.)

On February 11, 2026, the petitioner filed this motion for review (ECF 36), and the respondent replied on March 13, 2026.  (ECF 39.)  Oral argument was held on April 1, 2026.

**STANDARD OF REVIEW**

The Court of Federal Claims has jurisdiction to review a special master's decision under the Vaccine Act.  42 U.S.C. § 300aa-12(e).  On a motion for review, the court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law."  42 U.S.C. § 300aa-12(e)(2)(B); *see also* RCFC App'x B, Rule 27(b).

A petition for review of a special master's decision places a judge of the Court of Federal Claims "in the role of a reviewing judge."  *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 869 (Fed. Cir. 1992).  The degree of deference owed by a reviewing court to the special master's decision depends on which aspect of the decision is under review.  *Id.*, at 870 n.10.  A reviewing court "may set aside the decision of a special master only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion."  *Turner v. Sec'y of Health & Hum. Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001).

Legal determinations of a special master are reviewed *de novo*.  *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1323-24 (Fed. Cir. 2006) (citations omitted).

The Federal Circuit has described the standard of review of a special master's factual determinations as "the most deferential possible."  *Munn*, 970 F.2d at 870.  A reviewing court "owes [the] findings and conclusions by the special master great deference – no change may be made absent first a determination that the special master was 'arbitrary and capricious.'"  *Id*.  Thus, the special master's fact-intensive conclusions may not be second-guessed on a motion for review.  *Hodges v. Sec'y of Dep't of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).  The reviewing court may not "reweigh the factual evidence" or "assess whether the special master correctly evaluated the evidence."  *Porter v. Sec'y of Dep't of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011).

Under these rubrics, it is "extremely difficult" to establish error and overturn a special master's factual findings, if the special master has "considered the relevant evidence of the record, drawn plausible inferences and articulated a rational basis for the decision."  *Hines on*

6

*Behalf of Sevier v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). If the special master's finding of fact is "based on evidence in the record that [is] not wholly implausible," a reviewing court is "compelled to uphold that finding . . . ." *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1363 (Fed. Cir. 2000).

**DISCUSSION**

In his motion for review, the petitioner argues that: (1) the special master's factual determinations regarding the duration of the petitioner's treatment of his SIRVA injuries are arbitrary and capricious; (2) the special master erred by failing to apportion between the SIRVA injury and potentially unrelated factors that caused the petitioner's shoulder injury; and (3) the special master relied on the wrong legal standard in resolving the petitioner's claim for future pain and suffering.

Although it is the petitioner's last argument, the claim that the special master employed the wrong legal standard must be treated first as a logical matter. If the special master did rely on the wrong legal standard, then any factual findings about the petitioner's future pain and suffering may not stand, and the petitioner's claim would have to be remanded. Only if the special master relied on the correct legal standard would consideration of the other two arguments be necessary.

***Improper legal standard***

The petitioner argues that the special master improperly "created" and relied on a new legal standard of "clear and persuasive record proof" required to support an award of damages for future pain and suffering for SIRVA injuries. The petitioner focuses on a single sentence in the special master's decision in which the special master noted that he "generally ha[s] not included a future component in pain and suffering awards in SIRVA cases *absent clear (and persuasive) record proof* of a permanent disability or limitation." (ECF 35 at 12) (emphasis added.) The petitioner argues that this language reflects that the special master applied a heightened standard of proof, rather than the "preponderance of the evidence" standard applicable to vaccine-injury claims. *See Althen v. Sec'y of Health & Hum. Servs*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (petitioner must prove by a preponderance of the evidence that the vaccination caused his or her malady) (citations omitted); *see also* 42 U.S.C. § 300aa-13(a)(1)(A).

The language on which the petitioner bases his argument is imprecise and, on its face, seems to mix the "clear and convincing evidence" standard with the preponderant evidence standard to create an ungainly standard not recognized in the law or applicable precedents. It is evident from the context, however, that the special master used the phrase to summarize the respondent's view of the special master's prior decisions on damages for future pain and suffering in SIRVA cases. The special master explained: "[a]s [r]espondent recognizes . . . I generally have not included a future component in pain and suffering awards in SIRVA cases absent clear (and persuasive) record proof of a permanent disability or limitation." (ECF 35 at 12.) (emphasis added.) While the decisions reached by the special master in those prior cases may have applied his hybrid standard and thus reached an erroneous decision if the respondent's summary is accurate, they are not under review.

When making his determination about this petitioner's claim for damages for future pain and suffering, the special master's decision reflects reliance on the correct legal standard, and not a heightened standard.  Regarding this claim, the special master found:

> Here, the mild shoulder injury documented for nine months post-vaccination, the limited treatment received, the lack of documentation, and [r]espondent's proposed alternative explanations all weigh against a conclusion that [p]etitioner's later shoulder complaints are ***preponderantly related*** to his SIRVA. As a result, the demand for a future component ***has not been preponderantly established***.

(*Id*.) (emphasis added.)

Despite the imprecise and legally erroneous language employed by the special master in summarizing the respondent's argument, the relevant part of the decision shows that the special master employed the correct "preponderance of the evidence" standard to reject the petitioner's claim.  On *de novo* review, the petitioner has failed to show error by the special master on this legal question.

### The special master's factual determinations

The petitioner argues that the special master's factual determination that the petitioner "was not experiencing significant sequelae of an ongoing shoulder injury" (*id*. at 11) between 2022 and 2024 is arbitrary and capricious.  According to the petitioner, his medical records establish that "the steroid injections he received in 2022 and 2024 were to treat the inflammatory condition of bursitis, which was caused by his vaccine injury." (ECF 36-1 at 12.)  In particular, the petitioner rejects the special master's reference to the respondent's proposed alternative explanations as a factor in his conclusion that the petitioner's later shoulder complaints are not preponderantly related to his SIRVA.

The petitioner argues that "his treating doctors clearly and explicitly stated" that the steroid injection he received in 2024 was to treat bursitis attributable to his SIRVA.  (ECF 36-1 at 14.)  Citing *Curcuras v. Secretary of Health & Human Services*, the petitioner argues that the special master did not give sufficient weight to his contemporaneous medical records that note the petitioner's pain and suffering was attributable to his SIRVA beyond 2022.  *Curcuras,* 993 F.2d 1525, 1528 (Fed. Cir. 1993) (holding that "[m]edical records, in general, warrant consideration as trustworthy evidence").  The special master's factual findings regarding the duration of the petitioner's treatment for his SIRVA "considered the relevant evidence of the record, [drew] plausible inferences and articulated a rational basis for the decision." *Hines*, 940 F.2d at 1528.  The petitioner's argument reflects a mere disagreement with the special master's factual determination.  The special master based his conclusion on a thorough review of the record, including the petitioner's most recent medical records.  (ECF 35 at 4-9.)

The special master rejected the petitioner's claim by explaining that the orthopedist's 2024 notes of his physical examination of the petitioner's shoulder "seem to have been carried forward rather than representing a new evaluation."  (*Id*. at 8.)  This conclusion reflects the fact

8

that the orthopedist's notes from both the 2024 examination and a 2022 examination of the petitioner were identical.  (ECF 6-1 at 204-05; ECF 26-1 at 96-97.)  Additionally, on January 11, 2022, the orthopedist's assessment noted that the petitioner "presents to clinic complaining of [right] shoulder pain status post flu vaccination to his right arm. Patient has symptoms consistent with subacromial bursitis/impingement. This is a known potential reaction after a vaccination given high in the deltoid that can irritate the subacromial space."  (ECF 6-1 at 205.)  The orthopedist's assessment from July 19, 2024, also uses identical language.  (ECF 26-1 at 97.)

The petitioner does not argue that the special master failed to consider his recent medical records, instead arguing that the special master did not give them appropriate weight.  The weight to which any piece of evidence is entitled is a decision for the special master, not a reviewing court.  *Lampe*, 219 F.3d at 1360 (the role of a reviewing court is not to reweigh the factual evidence) (citation omitted).  This argument cannot, therefore, provide a basis for overturning the special master's conclusion.

The special master plausibly inferred from the record that the petitioner's shoulder pain extending more than nine months after the vaccination was not preponderantly related to his SIRVA.  The special master specifically considered the issue and concluded that "a good response to [the steroid] injection – which can often explain a treatment gap in its wake – does not explain the [22]-month gap in documentation or treatment, especially with the over 35 unrelated medical encounters documented herein."  (ECF 35 at 11.)  He also arrived at this conclusion in reliance on the fact that the petitioner had had 35 medical encounters during the intervening 22 months, showing he was attending to his ailments, without seeking to address lingering pain in his right shoulder.  The special master's inference, based on the evidence and on gaps in the evidence, is within the special master's purview to make.  *Hodges*, 9 F.3d at 961 (Vaccine Act tasks special masters with the "unenviable job of sorting through these painful cases and, based upon their accumulated expertise in the field, judging the merits of the individual claims.").

The special master also noted other bases aside from the lack of medical documentation to support his conclusion about the duration of the SIRVA-related pain and suffering.  Among these bases are the mild severity of the petitioner's SIRVA and the limited treatment received by the petitioner.  (ECF 35 at 12.)

The petitioner disputes these findings, arguing that his 2022 steroid injection effectively treated his SIRVA for nearly two years.  The burden of proving this fact rested on the petitioner.  *See Althen*, 418 F.3d at 1278.  At oral argument (but not in his brief), the petitioner cited *Kirby v. Sec'y of Health & Hum. Servs*, 997 F.3d 1378 (Fed. Cir. 2021), to support the argument that a 22-month gap in seeking treatment does not constitute an unreasonable lapse in symptoms and can support a claim for future pain and suffering.  In *Kirby*, the Federal Circuit reversed a decision by a judge of this court overturning a special master's award damages for future pain and suffering.  The judge determined that the silence in the petitioner's medical records did not support the special master's finding that her symptoms had persisted beyond six months.  Reversing the judge's decision and reinstating the special master's award, the Federal Circuit held that the special master "based his finding on plausible evidence," and that his ruling "must stand when considered in light of the record as a whole."  *Id*. at 1382.  *Kirby* does not require the same outcome in every case.  In fact, the opposite is true.  *Kirby* reinforces the importance of

deference to a special master's factual conclusions if they address and are plausibly based on the evidence in the record.

The record contains neither evidence that a steroid injection can remain effective in treating SIRVA-related bursitis for close to two years, nor any evidence that a steroid injection becomes ineffective after a certain period. The evidence could have supported an award for future pain and suffering, but it also plausibly supports the special master's conclusion not to award damages for future pain and suffering, especially when considered in the context of other evidence on which the special master based his finding. Before reaching that conclusion, the special master considered the entire record, including inferences drawn from the evidence and gaps in that evidence. As such, the special master's factual conclusions are "based on evidence in the record that [is] not wholly implausible," and it must therefore be sustained "as not being arbitrary or capricious." *Lampe*, 219 F.3d at 1363.

### *Failure to apportion*

Finally, the petitioner contends that the special master erred by failing to require the respondent to apportion causation between the vaccine and any alternative causes of the petitioner's ongoing shoulder injury. (ECF 36-1 at 14.) The petitioner argues that the respondent attributed the petitioner's symptoms to mild and asymptomatic osteoarthritis rather than the SIRVA, as a defense to the petitioner's post-September 2022 shoulder symptoms. As a result, the respondent had the burden to establish that the proffered alternative cause of the continuing shoulder pain was the sole substantial factor in causing the continuing injury. (*Id*. at 11.)

The petitioner is mistaken. Until the petitioner had met his burden that the vaccine was the cause of the petitioner's later shoulder injury, the respondent was "permitted to offer evidence to demonstrate the inadequacy of the petitioner's evidence on a requisite element of the petitioner's case[-]in-chief" without assuming any burden of proof. *De Bazan v. Sec'y of HHS*, 539 F.3d 1347, 1353 (Fed. Cir. 2008) (respondent may show inadequacy of petitioner's proof without assuming burden of proving that another factor solely caused the injury).

The respondent had argued that the petitioner's continuing shoulder pain may have been attributable to several other causes, one of which was osteoarthritis. The respondent's argument was made at a time when the petitioner had yet to demonstrate that the vaccine was the cause of the petitioner's later shoulder injury; indeed, the petitioner never met his burden of so demonstrating. Thus, at the time he made the argument, the respondent was allowed to offer the evidence to show that the petitioner had failed to satisfy his burden of proof on an element of his case without otherwise assuming the burden of proof on its alternative theory. *Id*.

Because the evidence was presented to challenge the petitioner's claim and not as a defense to the injuries themselves, the respondent was not required to apportion causation between the SIRVA and any alternative cause. The issue also became irrelevant once the special master found that the petitioner had not sustained his burden of proof.

**CONCLUSION**

The special master used the correct legal standard, thoroughly evaluated the evidence, drew reasonable inferences, and provided a rational basis, grounded in the evidence, for his conclusion about the duration of the petitioner's shoulder pain. The findings regarding the connection between the petitioner's SIRVA and later shoulder pain are supported by the record. The petitioner has also failed to demonstrate that his later shoulder pain was vaccine-related, so the respondent had no obligation to prove an alternative cause for that pain.

The special master's decision is sustained, and the motion for review (ECF 36) is **DENIED**. The Clerk is **DIRECTED** to enter judgment accordingly.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

11