# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-0856V

|  |  |
|---|---|
| RICHARD BIEBER,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: January 12, 2026 |

*Richard Gage, Richard Gage, P.C. (WY), Cheyenne, WY, for Petitioner.*

*Eleanor Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On June 5, 2024, Richard Bieber filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") as the result of an influenza ("flu") vaccine received on November 29, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Respondent conceded entitlement for a Table SIRVA, but the parties could not agree to a resulting damages award, and their dispute was therefore submitted for resolution at an expedited proceeding on December 19, 2025.

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**For the following reasons, I find that Petitioner has established past pain and suffering warranting an award of $52,500.00.**

## I.    Procedural History

The case was assigned to the SPU in August 2024. ECF No. 10. In January 2025, Petitioner was found entitled to compensation for a Table SIRVA (consistent with Respondent's concession). ECF Nos. 15-17. The parties exchanged their respective valuations of damages but immediately reported an impasse. ECF No. 22. Petitioner at that time expressly asked that "this case be assigned to a Special Master for litigation" – ignoring the obvious fact that it was already *was* "assigned to a Special Master" (me), but perhaps assuming that the claim's placement in SPU meant it was somehow not likely to receive the same degree of oversight or care in its adjudication (since staff attorneys assist me with SPU claims management). *Id.*

In reaction, I issued a scheduling order on March 3, 2025. ECF No. 23. In it, I explained that numerous SIRVA claims had been successfully resolved within SPU, even when damages were disputed,[3] and that an expedited procedure (the process informally referred to as "Motions Day") had been created for precisely those matters where the parties could not settle a damages dispute. *Id.* at 2. I also noted that *only* where the nature of a damages dispute presented facts "too complex for SPU" would a matter be transferred out. *Id.* I thus ordered the parties to endeavor again to resolve their damages dispute – in SPU. *Id.*

In April 2025, I set a damages briefing schedule based upon the parties' proposed timeframe. ECF No. 25 at 1-2. I specifically noted that each party's briefing should address both the case-specific facts, and "the party's position on each claimed damages component and underlying reasoning – *including comparison to past reasoned opinions on Table SIRVA damages in the Vaccine Program*." *Id.* at 1 (emphasis added).[4] I thus contemplated that both sides would identify the categories of damages sought; the amounts in dispute; and the bases for those numbers. I also expected – consistent with what regularly happens when SPU cases involve damages disputes – that the parties would identify those comparable prior Program determinations they believed offered good guidance to how damages should be resolved.

---

[3] Citing *Yodowitz v. Sec'y of Health & Hum. Servs.*, No. 21-370V, 2024 WL 4284926, at *2 – 3 (Fed. Cl. Spec. Mstr. Aug. 23, 2024) (containing statistics regarding compensation in SPU SIRVA cases, as of July 1, 2024).

[4] Citing *Timberlake v. Sec'y of Health & Hum. Servs.*, No. 20-1905V, 2025 WL 721730 at *1 – 3 (Fed. Cl. Spec. Mstr. Feb. 19, 2025) (containing *updated* statistics regarding compensation in SPU SIRVA cases, as of January 1, 2025).

The parties prepared and filed briefs regarding their respective positions. *See* Petitioner's Brief filed May 29, 2025, ECF No. 27; Response filed July 16, 2025, ECF No. 28; Reply filed Aug. 15, 2025, ECF No. 29. In November 2025, I issued a scheduling order proposing that the dispute be resolved at an upcoming Motions Day hearing, and offered the date of December 19, 2025 for that purpose. Scheduling Order entered November 19, 2025 (ECF No. 30).

In reaction, Petitioner expressed the view that although the proposed date for a Motions Day hearing was acceptable, an expedited hearing would not be appropriate in this matter, adding that pain and suffering was the sole damages component at issue. Status Report filed November 26, 2025 (ECF No. 32). In order to better understand Petitioner's objection, I scheduled a status conference, which was held December 9, 2025. I explained to counsel how Motions Day matters were resolved, and again noted that comparable decisions were very helpful in resolving pain and suffering disputes – adding that this kind of damages component was routinely resolved at these expedited hearings.[5]

The matter was heard as scheduled at the December 19, 2025 expedited hearing, At that time, I heard from both sides, then issued an oral ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A). An official recording and a transcript of the proceeding were taken, *see* ECF Nos. 33-34. My oral ruling which is fully adopted and incorporated herein.

## II. Authority

As noted in this case's Procedural History and accompanying footnotes, I have repeatedly discussed at length the legal standard to be considered in determining SIRVA damages, taking into account prior compensation determinations within SPU. This information, with updated statistics as of July 1, 2025, can be found in Sections I and II of *Matthews v. Sec'y of Health & Hum. Servs.*, No. 22-1396V, 2025 WL 2606607 (Fed. Cl. Spec. Mstr. Aug. 13, 2025). My prior discussion of these topics is fully adopted and incorporated herein.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr.

---

[5] Minute Entry entered Dec. 9, 2025 (Non-PDF) (noting that an official record was taken via electronic digital recording). *See also* Petitioner's Ex. 10 on Nov. 25, 2025, ECF No. 31 (containing updated medical records).

Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### III.    Evidence[7]

Petitioner was born in May 1963. He received medical care through the Kaiser Permanente consortium. *See generally* Exs. 1-2. His history included headaches, and lower body pain persisting despite hernia surgery and periodic nerve block treatments. *See e.g.,* Ex. 1 at 224-28 (Nov. 17, 2021 primary care appointment, also reflecting prescriptions for hydrocodone-acetaminophen (Norco) and diazepam (Valium)).

However, Petitioner had no history of right shoulder pain or dysfunction, *see* Response at 2, upon receiving the at-issue flu vaccine in his right deltoid on November 29, 2021, Ex. 3 at 4.

Twelve days post-vaccination, on December 10, 2021, Petitioner emailed his primary care physician ("PCP"), reporting acute and persistent right shoulder pain, which particularly disrupted his sleep and sudden movements. Ex. 4 at 4. Petitioner requested early refills of his pre-vaccination, unrelated prescriptions for hydrocodone-acetaminophen and diazepam, in advance of a trip happening the next week. *Id.*

In a December 29, 2021 follow-up email to his PCP, Petitioner advised that his right shoulder pain had "gotten a lot worse," and he requested an appointment for when he returned from vacation the following week. Ex. 4 at 3.

On January 4, 2022, a primary care physician's assistant ("PA") recorded Petitioner's history of right shoulder pain persisting since the vaccination. Ex. 1 at 216. He had a "mild achiness at rest," which worsened with pressure or movement. *Id.* He was limiting use of the arm as much as possible, despite being right-hand dominant. *Id.* Physical examination found tenderness at the deltoid muscle. *Id.* at 217. Range of motion ("ROM") was "full – pain with extension and adduction." *Id.* There was full strength and a positive impingement sign. *Id.* The PA assessed: "probable shoulder injury related to vaccine administration/ subdeltoid or subacromial bursitis." *Id.* at 218. Beyond "discuss[ing] gentle range of motion exercises," and noting that Petitioner "may consider

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[7] While I have not specifically addressed every medical record, or all arguments presented in the parties' briefs, I have fully considered all records as well as all arguments presented by both parties.

steroid injection," the PA deferred treatment decisions to more specialized providers, specifically orthopedics.[8]

At a January 11, 2022 orthopedics initial consult, Petitioner again reported post-vaccination, persistent right shoulder pain – particularly with overhead activities and without significant relief from NSAIDs, ice, and activity modification. Ex. 1 at 201. On physical examination, the right shoulder had reduced active ROM – specifically 130 degrees forward flexion; 85 degrees internal rotation; and 40 degrees external rotation. *Id.* at 204.[9] The shoulder also had tenderness to palpation at the biceps, and positive Neers and Hawkins signs. *Id.* at 204-05. The orthopedist assessed Petitioner with "symptoms consistent with subacromial bursitis/ impingement. This is a known potential reaction after a vaccination given high in the deltoid irritat[ing] subacromial space." *Id.* at 205. The orthopedist did not offer any *treatment* at this encounter, however. *Id.*

The orthopedist noted that an x-ray of the right shoulder (also occurring on January 11, 2022) had visualized "no obvious bony abnormality." Ex. 1 at 205. But the x-ray report also notes "moderate right acromioclavicular arthritic changes" and "mild right glenohumeral arthritic change." *Id.* at 198.

A February 11, 2022 MRI of Petitioner's right shoulder (ordered by the orthopedist) was suggestive of "mild" osteoarthritis, edema, bursitis, and tearing. Ex. 1 at 182. On February 14, 2022 over the phone, the orthopedist and Petitioner reviewed the MRI findings of "posterior superior rotator cuff tendinosis… Very small partial articular-sided supraspinatus tendon tear as well." *Id.* at 179. The orthopedist did not recommend surgical intervention at that time, however, and instead proposed only conservative treatment with NSAIDs, ice/heat, and a future steroid injection. *Id.*

Three months later, on May 13, 2022, Petitioner followed up with his orthopedist. The physical examination findings regarding the right shoulder are carried over from the initial evaluation. *Compare* Ex. 1 at 204 with *id.* at 134. The May 13, 2022 appointment was in fact limited to administration of a right subacromial bursa steroid injection (Petitioner's first), and imaging of his left knee. Ex. 1 at 130-35.

On May 27, 2022, a registered nurse provided counseling for Petitioner's pre-vaccination chronic pain (noting that he had "herniated a disc 3+ years ago, had a discotomy[,] tried multiple injections with short-term relief"), without any reference to the

---

[8] The primary care PA also recorded: "Referral to physical therapy." Ex. 1 at 218. But no corresponding records of formal PT have been filed. Petitioner's affidavits and the parties' briefing do not reference formal PT. Therefore, there is not preponderant evidence that Petitioner's SIRVA treatment course included formal PT (in contrast to the *informal* home exercises suggested by his primary care provider, Ex. 1 at 218).

[9] These right shoulder active ROM measures were all reduced in comparison to those in the non-vaccinated left shoulder. Ex. 1 at 204.

right shoulder. Ex. 1 at 115-16. And on June 13, 2022, the PCP requested a neurology consult for Petitioner's decade-plus history of hand tremors that were "starting to interfere with his work slightly." Ex. 1 at 107. The August 3, 2022 neurology consult and subsequent imaging did not shed light on the shoulder complaint. *Id.* at 77-86, 52, 45.

In the record of an August 3, 2022 orthopedics follow-up, Petitioner's physical examination findings are again identical to (and probably carried over from) the record of the initial appointment. *Compare* Ex. 1 at 204 with *id.* at 101. Petitioner reported that the subacromial bursa steroid injection three months ago had "not significantly alleviate[d] his symptoms… having continued pain to his right shoulder." *Id.* at 97. The orthopedist planned another steroid injection, this time in the glenohumeral space under fluoroscopic guidance by a radiology specialist. *Id.* at 102. The shoulder treatment plan also included a new prescription for Meloxicam and a referral to PT. *Id.*[10]

On September 6, 2022, as recommended by Petitioner's treating orthopedist, a radiology PA administered the fluoroscopy-guided steroid injection to his right shoulder glenohumeral space. Ex. 1 at 48.

Thereafter, Petitioner was not documented to have any ongoing right shoulder complaint **for approximately 22 months** (September 6, 2022 – July 19, 2024) **despite over 35[11] medical encounters** (encompassing appointments, procedures, phone calls, and emails) **regarding other concerns** (including but not limited to chronic pain in his groin, hips, and lower back). These encounters are further detailed below:

| Date | Medical Provider | Encounter Type | Concern | Citation |
|---|---|---|---|---|
| 09/07/22 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 206 |
| 09/16/22 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 198 |
| 10/10/22 | General Surgery | Surg. Exploration & Neurectomy | Lower Body Pain | Ex. 2 at 154-68 |
| 10/12/22 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 136-37 |
| 11/01/22 | General Surgery | Appointment | Lower Body Pain | Ex. 2 at 127-31 |

---

[10] As already noted at footnote 15, no records or briefing substantiating any formal PT has been submitted in this case.

[11] Respondent identified just *eleven* medical encounters where Petitioner did not mention right shoulder pain. Response, ECF No. 28 at 3, 7. But Respondent's Response necessarily could not incorporate Petitioner's subsequently-filed additional medical records within Ex. 10, ECF No. 31. I have independently reviewed all filed medical records.

| 12/08/22 | Neurosurgery | Nerve Block | Lower Body Pain | Ex. 2 at 121-22 |
|---|---|---|---|---|
| 12/09/22 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 107 |
| 12/15/22 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 104 |
| 02/01/23 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 93 |
| 02/22/23 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 86 |
| 03/01/23 | Urgent Care | Appointment | Stomach & Neck Pain, Dizziness | Ex. 2 at 43-52 |
| 03/06/23 | General Surgery | Communication | Lower Body Pain | Ex. 2 at 33 |
| 03/24/23 | Vascular Therapy | Appointment | Carotid Artery | Ex. 8 at 412-14 |
| 03/31/23 | General Surgery | Communication | Lower Body Pain | Ex. 8 at 408 |
| 04/05/23 | Neurology | Appointment | Tremors; Headaches; Fatigue; LBP | Ex. 8 at 395-402 |
| 05/03/23 | Primary Care | Appointment | Lower Body Pain | Ex. 8 at 372-74[12] |
| 05/26/23 | Radiology | MRI | Lower Body Pain | Ex. 8 at 364 |
| 08/04/23 | Physical Therapy | Appointment | Lower Body Pain | Ex. 8 at 357-59 |
| 08/11/23 | Physical Therapy | Appointment | Lower Body Pain | Ex. 8 at 345-45 |
| 08/21/23 | Primary Care | Appointment | Lower Body Pain | Ex. 8 at 341-42 |
| 08/22/23 | General Surgery | Communication | Lower Body Pain | Ex. 8 at 336-37 |
| 09/11/23 | Primary Care | Appointment | Lower Body Pain | Ex. 8 at 326-28 |
| 09/15/23 | Physical Therapy | Appointment | Lower Body Pain | Ex. 8 at 320-21 |
| 09/16/23 | Radiology | MRI | Lower Body Pain | Ex. 8 at 315 |
| 10/27/23 | Orthopedics | Appointment (Including X-rays) | Lower Body Pain | Ex. 8 at 295-306[13] |

---

[12] This May 3, 2023 record specifies: "80% of [Petitioner's] pain is his R lower leg/ back. 20% is his abdominal/ groin pain." Ex. 8 at 372. Furthermore, the record was created by Petitioner's longstanding PCP, who had addressed his right shoulder pain in late 2021 – early 2022. *See, e.g.*, Ex. 4 at 3-4, Ex. 1 at 216-18. But the PCP did not document a shoulder injury in May 2023.

[13] The October 27, 2023 record notes that Petitioner's *last* orthopedics appointment over one year ago concerned his right shoulder. Ex. 8 at 295. But no continuing shoulder injury was documented.

7

| 11/24/23 | Sports Medicine | Steroid Injection | Lower Body Pan | Ex. 8 at 287-90 |
|---|---|---|---|---|
| 12/07/23 | Primary Care | Appointment | Post-Steroid Injection Rash | Ex. 8 at 267 |
| 12/15/23 | Audiology | Appointment | Hearing Concerns | Ex. 8 at 246-55 |
| 01/04/24 | Orthopedics | Appointment | Lower Body Pain | Ex. 8 at 237-39 |
| 01/19/24 | Orthopedics | Appointment | Lower Body Pain | Ex. 8 at 222-26 |
| 03/21/24 | Primary Care | Communication | Lower Body Pain (Work Excuse Letter) | Ex. 8 at 197-99 |
| 03/28/24 | Hospital? | Appointment | Lower Body Pain (Pre-Op Evaluation) | Ex. 8 at 178-89 |
| 04/19/24 | Acupuncture | Appointment | Lower Body Pain; Left-Sided Neck/ Arm Pain | Ex. 8 at 170 |
| 04/25/24 | Orthopedics | Surgical Hip Arthroplasty | Lower Body Pain | Ex. 8 at 160-62 |
| 05/06/24 | Neurology | Appointment | Tremors; Headaches; Fatigue | Ex. 8 at 150-57 |
| 05/10/24 | Orthopedics | Appointment | Lower Body Pain | Ex. 8 at 142-43 |
| 06/14/24 | Orthopedics | Appointment | Lower Body Pain | Ex. 8 at 127-28 |
| 07/16/24 | Primary Care | Appointment | Annual Evaluation; Lower Body Pain | Ex. 8 at 109-10 |

Afterwards – and after this matter had been initiated - Petitioner sought some additional evaluation of his right shoulder. Specifically on July 19, 2024, he returned to the orthopedist last seen roughly two years earlier. The physical examination findings were again identical and seem to have been carried forward rather than representing a new evaluation. *Compare* Ex. 1 at 204 with Ex. 8 at 96-97. As of July 2024, Petitioner reported: "[C]ontinued [right] shoulder pain. Some pain persists with overhead activities… [Steroid] injection to the glenohumeral space helped at his last visit a few years ago… [I]nterested in attempting injection again." *Id.* at 92. After obtaining repeat x-rays (Ex. 6 at 10) the orthopedist authorized the injection, Ex. 8 at 97-98, which was administered fluoroscopically by a radiology PA on August 30, 2024. *Id.* at 76.[14]

While the parties' briefing ends there, I have reviewed additional medical records referencing shoulder complaints. *See* Ex. 10 at 70-78 (August 2025 neurology appointment, with Petitioner mentioning "more issues with his right shoulder/bursitis and back" but no active treatment planned); *id.* at 53-59 (September 2025 orthopedics appointment for pain in the right shoulder and elbow, with no new physical examination);

---

[14] Petitioner incorrectly states that this injection was on September 16, 2024. Reply at 2, citing Ex. 9 at 1 (reflecting that a physician letter was prepared on September 16, 2024).

8

*id.* at 33-34 (September 2025 appointment with different orthopedist for a one-month history of right elbow pain, assessed as tennis elbow and treated with a steroid injection); *id.* at 8-10 (November 2025 right shoulder steroid injection).

In his initial affidavit, Petitioner reviewed his medical history up until the September 2022 steroid injection, and then summarily stated that his shoulder pain "continues to this day" – meaning June 4, 2024. Ex. 5 at ¶ 10. In a supplemental statement,[15] Petitioner maintains that he "still" suffers "daily" pain, weakness, and movement restrictions in his right arm, especially with activity. Ex. 7 at ¶ 2. He states that this injury disrupts his sleep; carrying groceries; recreational sports; shoveling snow; and walking his dog. *Id.* at ¶¶ 4-8. Petitioner reports being "unsure what the next step in trying to relieve the pain in [my shoulder is, other than surgery, which I would rather not do. And there is no guarantee that will work." *Id.* at ¶ 9.

## IV.    Parties' Arguments

Petitioner requested $100,000.00 for his past pain and suffering, and $10,000.00 per year going forward for future pain and suffering, for a remaining life expectancy of 13 years. Brief at 6. He maintains that he has suffered a "permanent" shoulder injury from the vaccine. Brief at 2, 4, 6. He also contends that the intervening medical treatment for other concerns had nothing to do with his shoulder, and do not contain "any statement from his treaters that his… SIRVA had healed." Reply at 1-2.

Petitioner argued that pain and suffering should not be determined based on a continuum. Brief at 2; *but see e.g., Matthews*, 2025 WL 2606607, at *2 (explaining that "I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case…") (internal citations omitted). He also contends that because petitioners often settle SIRVA claims, "[c]omparable cases that are appropriately valued are . . . difficult to find in the Vaccine Program." Brief at 2-3; *but see Matthews*, 2025 WL 2606607, at *2-4 (discussing statistics, and the extent of reasoned opinions, about SPU SIRVA damages especially pain and suffering).

Notably – and despite ample opportunity - Petitioner's briefing did not cite a single prior reasoned decision relating to pain and suffering awards issued in comparable SIRVA cases, or attempt to distinguish the cases offered by Respondent. At most, at the expedited hearing and in response to my questioning, Petitioner's counsel recalled securing a future pain and suffering award in one SIRVA case for a client named "Edward Anthony." Tr. 8. Petitioner's counsel also offered to "further review [his] past cases and give you some $100,000 plus future" cases - while conceding that had *already* been ordered (and not done). *Id.* at 8-9.

---

[15] Petitioner's supplemental statement at Ex. 7 is not notarized, but it is made under penalty of perjury. *See* 28 U.S.C. § 1746 (providing that such a statement may be given "like force and effect" as a notarized affidavit).

Respondent argued for a lower award of $52,500.00 for past pain and suffering. Response at 2, 7. Contending that Petitioner reported his pain rather "immediately" and then received "limited, conservative treatment" for a "mild" SIRVA that "resolved in nine months," Respondent urged an award comparable to that in *Tani*, *Johnson*, *Green*, and *Horn*." *Id.* at 7-9.[16] At the expedited hearing, Respondent noted the difficulty of responding to Petitioner's reference to a single prior case "quite late and notably without a case number." Tr. 11.

Respondent opposed any award for future pain and suffering. He argued that the "nineteen-month gap in treatment combined with the intervening visits where no shoulder pain was mentioned demonstrates that the Petitioner's SIRVA resolved" after approximately nine months. Response at 7. Respondent also argued that the medical records do not establish the existence of a permanent vaccine injury, and that Petitioner's later complaints may be explained by unrelated conditions such as the x-ray findings of osteoarthritis at the shoulder. *Id.* at 9-10.[17]

## V.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A full review of the record demonstrates that Petitioner suffered a mild SIRVA. Certainly, he reported the injury 12 days post-vaccination, with the first in-person evaluation occurring 36 days post-vaccination. But he was able to engage in self-management of the injury for a period of time (with NSAIDs, and perhaps pain

---

[16] Citing *Tani v. Sec'y of Health & Human Servs.*, No. 22-1305V, 2025 WL 1167116 (Fed. Cl. Spec. Mstr. Mar. 13, 2025) (awarding $50,000.00 for past pain and suffering); *Johnson v. Sec'y of Health & Human Servs.*, No. 19-1543V, 2023 WL 3580142 (Fed. Cl. Spec. Mstr. May 22, 2023) ($50,000.00); *Green v. Sec'y of Health & Human Servs.*, No. 20-0378V, 2023 WL 6444421 (Fed. Cl. Spec. Mstr. Sept. 1, 2023) ($55,000.00); *Horn v. Sec'y of Health & Human Servs.*, No. 21-0398V, 2024 WL 910811 (Fed. Spec. Mstr. Jan. 30, 2024) ($55,000.00).

[17] Response at 9, citing *Laurette v. Sec'y of Health & Human Servs.*, No. 19-1047V, 2024 WL 1741611, at *6 (Fed. Cl. Spec. Mstr. Mar. 25, 2024) and *Smith v. Sec'y of Health & Human Servs.*, No. 19-1384V, 2022 WL 3012503, at *7 (Fed. Cl. Spec. Mstr. June 29, 2022) (in which a treating orthopedist diagnosed a permanent post-surgical disability resulting from the vaccine injury).

medications prescribed for preexisting conditions). Mild findings on physical examination and imagin were derived, with no recommendation for surgery. And what treatment he did later obtain was fairly conservative (home exercises, one new prescription for Meloxicam, and two steroid injections) with that active treatment extending just nine months post-vaccination (September 2022). And without minimizing the shoulder injury's impact on Petitioner's daily life or personal activities, I observe the lack of any significant impacts on his employment or other obligations.[18]

Petitioner argued that the September 2022 steroid injection relieved his injury for up to six months. Tr. 5, 7. But I agree with Respondent (Tr. 11-12), that a good response to such an injection – which can often explain a treatment gap in its wake - does not explain the *19-month gap* in documentation or treatment, especially with the over 35 unrelated medical encounters documented herein. Instead, this record supports the conclusion that Petitioner was not experiencing significant sequelae of an ongoing shoulder injury throughout this period. Tr. 15.[19]

There is also the undeniable fact that Petitioner and his counsel made no effort to identify *a single published reasoned decision* that could provide a comparable case for guidance in deciding pain and suffering. This is something that Program attorneys regularly do in preparing for SPU Motions Day hearings. Indeed, one of my purposes in creating the Motions Day process more than five years ago was to generate decisions relevant to SIRVAs and other Table claims that litigants could rely upon – in the hope that they might find ways to settle such claims on their own. There are over 100 such decisions at this point, and they provide a wealth of results that claimants can reference in explaining why a particular award is appropriate.

Petitioner cannot possibly deny that he was provided the opportunity to better defend his pain and suffering demand. He had *ample* opportunity and notice to support his damages demand with comparable cases, per my March and April 2025 scheduling orders, and again I noted during the December 2025 pre-hearing status conference what counsel should expect at Motions Day. But (as I emphasized at the hearing) Petitioner

---

[18] At the expedited hearing, Petitioner's counsel averred that the SIRVA "affect[ed] his ability to work" as a veterinary technician. Tr. 7. But this argument was not advanced in the written briefing or testimony. Nor did I find it corroborated by medical records. *Compare with* Ex. 1 at 107 (June 2022 medical record reflecting that Petitioner's unrelated tremors were "starting to interfere with his work slightly") and Ex. 8 at 197-99 (2024 request for work accommodations due to hip pain).

[19] I also note that at the expedited hearing, Petitioner's counsel newly argued that he has a "precursor" to osteoporosis and was taking bone density medications, which explains his hesitance against further steroids. Tr. 6. This is not in Petitioner's own statements or any medical records. *See also* Ex. 1 at 14, 16 (Petitioner's report that he was not taking recommended calcium supplements).

had failed to provide that support.[20] By contrast, Respondent's proffer of this case at $52,500.00, based on his specific comparison to the awards via past reasoned opinions in *Tani*, *Johnson*, *Green*, and *Horn* (and no rebuttal from Petitioner) was not only reasonable, but far more persuasively defended. As a result, it is adopted herein for Petitioner's award of actual pain and suffering. Tr. 15-16.

Finally, there is the issue of Petitioner's request for a future pain and suffering component. Some petitioners have justified future pain and suffering awards for SIRVAs – but they do so by reference to strong medical evidence of an injury that continued without interruption and is medically attributable back to the vaccine, and not from potential alternative explanations. Tr. 16-17; *see also* Section 15(a)(4) (permitting an award for "pain and suffering and emotional distress *from the vaccine-related injury*") (emphasis added). As Respondent recognizes (Response at 9), I generally have not included a future component in pain and suffering awards in SIRVA cases absent clear (and persuasive) record proof of a permanent disability or limitation.[21] Here, the mild shoulder injury documented for nine months post-vaccination, the limited treatment received, the lack of documentation, and Respondent's proposed alternative explanations (*see* Response at 9-10), all weigh against a conclusion that Petitioner's later shoulder complaints are preponderantly related to his SIRVA. As a result, the demand for a future component has not been preponderantly supported.

---

[20] As noted above during the expedited hearing, Petitioner referenced the "Edward Anthony" case. Tr. 8-9. I agree that Respondent could not have been reasonably expected to respond, without advance notice or even the case number, during the hearing.

From my subsequent research, Mr. Gage is most likely referencing *Anthony v. Sec'y of Health & Hum. Servs.*, No. 14-0680V, 2016 WL 1169147 (Fed. Cl. Spec. Mstr. Mar. 2, 2016) (decision awarding damages based on Respondent's proffer). Even if cited in a timely manner, *Anthony* is not helpful to guide future cases, for reasons previously explained. *See e.g.*, *Desai v. Sec'y of Health & Hum. Servs.*, No. 14-0811V, 2020 WL 8184767, at *9 (Fed. Cl. Spec. Mstr. Dec. 18, 2020) (continued reliance on *Anthony* was "regrettable" because in that case, the special master had decided pain and suffering in a non-public bench ruling) (internal citations omitted).

[21] *Laurette v. Sec'y of Health & Hum. Servs.*, No. 19-1047V, 2024 WL 1741611, at *6 (Fed. Cl. Spec. Mstr. Mar. 25, 2024), citing *Curri v. Sec'y of Health & Hum. Servs.*, No. 17-0432V, 2018 WL 6273562 at *2 (Fed. Cl. Spec. Mstr. Oct. 31, 2018) (noting that the petitioner had received written medical evaluations concluding that additional treatment (which featured surgery) could not assist her, leaving her with a permanent 'scheduled loss of use' of 22.5 percent of her left arm); *Smith v. Sec'y of Health & Hum. Servs.*, No. 19-1384V, 2022 WL 3012509, at *7 (Fed. Cl. Spec. Mstr. June 29, 2022) (finding a future pain and suffering component was justified primarily because petitioner's treating orthopedist diagnosed petitioner with a permanent post-surgical disability resulting from his vaccine injury). *See also Matthews*, 2025 WL 2606607 at *3 (noting the rarity of future pain and suffering awards in SIRVA cases).

**For the foregoing reasons, I find that a fair and appropriate award is $52,500.00 for past pain and suffering, with no future component.**

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **Petitioner is entitled to damages in the form of a lump sum payment of $52,500.00 (for past pain and suffering) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[22]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[22] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.